IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 12-30035 |
| | ) | |
| VERNON KLINEFELTER and | ) | |
| GERALDINE KLINEFELTER, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court is the Defendants' Joint Omnibus Motion in Limine. Pending also is the Government's First Motion in Limine.

### I.

On March 7, 2012, the Defendants were indicted and charged with one count of engaging in a scheme to defraud the Social Security Administration (SSA), in violation of 18 U.S.C. § 1343, one count of concealment/failure to disclose information, in violation of 42 U.S.C. § 408(a)(4), and one count of making a false statement to the SSA, in violation of 42 U.S.C. § 408(a)(2), all in connection with Defendant

Vernon Klinefelter's March 2004 application for more than $100,000 in social security disability benefits that were received between 2005 and 2008.

According to the Indictment, Defendant Vernon Klinefelter was a licensed physician and surgeon in the State of Illinois. His wife, Defendant Geraldine Klinefelter, was a registered nurse and advanced practical nurse (nurse practitioner). The Defendants together operated Abundant Life Medical Clinic (Abundant Life) in Taylorville, Illinois. The Indictment alleges Dr. Klinefelter was also the President/Medical Advisor of the Christian County Department of Public Health and was on staff as an independent contractor at St. Vincent Memorial Hospital in Taylorville (now known as Taylorville Memorial Hospital).

The final pretrial conference in this case is set for April 2, 2014, and the jury trial is scheduled to begin on April 7, 2014.

II.

The Defendants have filed a Joint Omnibus Motion in Limine, seeking an Order excluding certain evidence they believe the Government

intends to present at trial.

The Defendants specifically request that the Court require the Government before trial to proffer any and all evidence as set forth in their motion for the Court's consideration before it is presented to the jury. The Court notes that the Government's Response to the Defendants' Motion and the Government's own Motion in Limine both include factual summaries of the evidence it expects to present.

(A)

Based on the Government's pre-trial disclosures, the Defendants claim that the Government appears intent on presenting extensive evidence that the Defendants were earning a substantial income at the time they were applying for social security disability benefits and continuing after the claim was favorably adjudicated.

The Defendants seek the exclusion of evidence regarding any collateral assets or income that are not/were not considered by the SSA in determining whether Dr. Klinefelter was eligible to receive disability benefits. They claim this could promote a sense of "class warfare," which

would unduly and unfairly prejudice the Defendants and their right to a fair trial. The Defendants contend that evidence of these assets and sources of income is not relevant to the primary issue in dispute–whether the Defendants provided false information to the SSA regarding the active work level and the associated work income of Dr. Klinefelter.

The Government claims this evidence would not be presented in order to promote feelings of jealousy and envy, thereby prejudicing the Defendants before the jury. Moreover, the Government does not intend to promote a "class warfare" argument or suggest that Defendants are guilty because they are wealthy.

Additionally, the Defendants allege that the Government should be barred from making any reference or offering any evidence or testimony as to the amount of the private disability insurance payments being received by the Defendants during the relevant times. Their motion claims that what the Defendants may or may not have told representatives of their private disability insurer (Unum) about the work and earned income status of Dr. Klinefelter may be relevant. However, the specific amount of the

4

payments received does not advance any of the issues in dispute and would serve to unduly and unfairly prejudice the Defendants before the jury.

In its Response, the Government states that one of the primary motivations for submitting a falsified application for disability benefits is financial. The Government suggests it will present evidence that Defendants were benefitting simultaneously from disability insurance income from a private insurer (Unum) in addition to income from their joint medical practice (known as Abundant Life Medical Clinic), while a second corporation started by the Klinefelters was failing. According to the Government, this was at the same time they were applying for benefits from the SSA.

The Defendants are charged with a financial crime–a scheme to defraud the SSA. The Government alleges and the Court agrees that evidence of a financial motivation to commit a financial crime is both relevant and material to the issue of whether the Defendants had the requisite intent to commit the charged crimes. The Court trusts that the Government will not present its evidence in a manner so as to promote

class warfare or to suggest that Defendants are guilty because they are wealthy. However, the Court declines to foreclose the Government from offering any evidence that Defendants had a financial motivation to commit a financial crime. The Court will consider an appropriate, proposed limiting instruction regarding such evidence. Moreover, the Defendants may submit any case-specific voir dire questions.

(B)

The Defendants claim that the Government is expected to attempt to introduce "speculative, expert-opinion testimony from non-expert [SSA] representatives" that, but for the alleged misstatements and omissions of the Defendants, Dr. Klinefelter's disability claim would have been denied. The SSA performs an analysis that is commonly referred to as "Significant Gainful Activity" ("SGA"). They say that "SGA" refers to a balancing process whereby SSA considers the work abilities and capacities of the claimant and then balances a number of factors and variables to determine whether the claimant is able to engage in "SGA." The person making this determination is required to subjectively weigh and balance many factors

and variables before arriving at an objective conclusion as to whether the claimant is capable of "SGA." Accordingly, the Defendants allege that reasonable persons of the same employ and technical competence conforming to the same set of protocols can differ as to the conclusions to be drawn from the same facts relevant to an "SGA" determination.

Based on the foregoing, the Defendants allege that permitting a non-expert witness to speculatively testify that the claim of Dr. Klinefelter "would have been denied" does not fairly and accurately reflect the many variables in the "SGA" balancing process and its subjective nature, which could lead to reasonable but contradictory conclusions from different persons making the same "SGA" determination while considering the same facts.

In its Response, the Government notes that Defendants are charged with both making false material statements to obtain social security benefits and mail fraud. "The crime of fraud means intentional falsehoods that are material (i.e., likely to be significant to a reasonable person deciding what to do)." United States v. Spirk, 503 F.3d 619, 621 (7th Cir. 2007).

Because the Government must prove materiality, therefore, it must prove that the statements were not only false, but that they mattered in that the statements had the potential to affect a decision that was to be made.

According to the Government, the decision-makers here are the individuals employed by the SSA whose job it is to decide whether a disability applicant has met the eligibility requirements for benefits. The Government intends to present testimony from people who accepted and processed the application for disability payments. The Government notes that the witnesses are not professional advocates and are not paid to testify. It further claims it will be obvious that the witnesses are the very people who make these decisions every day and are the only individuals who can testify as to the materiality of a particular statement or set of statements on a disability application.

Based on the Government's representations, the Court will allow the witnesses to testify. The Defendants will have an opportunity to question these individuals regarding their "expertise" (or lack thereof) and subject the witnesses to a thorough and sifting cross examination regarding their

experience, the reasoning underlying their conclusions and any other relevant matters.

(C)

The Defendants further state they believe the Government may wish to present other evidence which, even if arguably admissible, should be excluded under Rule 403 of the Federal Rules of Evidence due to unfair prejudice associated with the evidence. The Defendants contend much of the anticipated evidence is irrelevant and apparently intended to sully their reputation and good name.

The Defendants allege there was a concurrent Medicare/Medicaid fraud investigation which was conducted contemporaneously with the SSA investigation that gave rise to the criminal case. Even though the Defendants were not charged in connection with the parallel investigation, they assert this evidence of "other bad acts or wrongs" will likely be presented solely for the prejudicial purpose of allowing the trier of fact to infer that Defendants engaged in an entirely separate and distinct pattern of criminal wrongdoing, in violation of the Federal Rules of Evidence. The

9

Defendants claim these uncharged assertions of Medicare/Medicaid fraud would serve only to inflame the passions of the jury and potentially result in a conviction for extraneous conduct not relevant to any disputed issue. The Defendants contend the anticipated evidence serves only as an attempt at character assassination. It does not make the issue of whether the Defendants perpetrated a fraud any more or less probable.

Based on the foregoing, the Defendants allege that even if relevant, the aforementioned evidence should be excluded due to the danger of unfair prejudice.

In its Response, the Government requests that the Defendants' Motion be denied, to the extent they are seeking an Order barring the presentation of evidence regarding billings submitted. The Government expects to present evidence to show that Vernon Klinefelter engaged in "significant gainful activity" by not only practicing medicine on his own (seeing hospital patients, etc.), but by also practicing medicine and supervising Geraldine Klinefelter's practice in their "Abundant Life" clinic in Taylorville. Illinois law required a nurse practitioner to have a

collaborative agreement with a practicing physician. The Government states that the only collaborative Mrs. Klinefelter practiced under was her agreement with Dr. Klinefelter.

The Government expects its evidence to show that, by submitting claims to insurance companies for services to patients, the Defendants were representing to the insurance companies, as well as to Medicaid and Medicare, that Mrs. Klinefelter was under the direct personal supervision of a competent and able physician. This is completely inconsistent with the representation that Dr. Klinefelter was profoundly disabled, which the Klinefelters are alleged to have made to the SSA. The Government alleges that the evidence of the Medicaid, Medicare and Insurance billings by both Defendants, therefore, will directly prove both the falsities of the representation regarding his disability, as well as show that Dr. Klinefelter was engaged in significant gainful activity.

Based on the foregoing, the Court concludes that the Government has established the potential relevance of the evidence pursuant to Rule 401 of the Federal Rules of Evidence. The Court is unable to determine based on

the current record that the probative value of this evidence is outweighed by the danger of unfair prejudice. Should they believe that standard has been met, the Defendants may at any time during the course of trial raise an objection based on Rule 403. The Defendants are also free to propose a limiting instruction to ensure that the evidence is not considered for any improper purpose.

For the reasons stated herein, the Joint Omnibus Motion in Limine filed by the Defendants will be Denied.

III.

(A)

The Government has also filed a Motion in Limine. In the Motion, the Government states it has received notice that Defendants intend to call Springfield Attorney Don Hanrahan, who represented the Defendants before the SSA concerning the very disability claim that is the subject of the offenses charged and communicated with the Government concerning the criminal investigation, to offer "expert" opinions regarding the social security administration claims evaluation process and determination.

Moreover, the Defendants have informed the Government that they intend to elicit evidence concerning the death of their 18-year old son, Paul, in November 2004 from a drug overdose, more than six months after the defendants initially submitted the disability application. Additionally, a portion of the Government's evidence in this case involves confidential medical and personal information, including billing information, of the Defendants' patients.

> The Government requests that the Court do as follows:
>
> (A) exclude the testimony of Attorney Hanrahan as plainly irrelevant under Fed. R. Evid. 402, likely to cause unfair prejudice and confusion of the issues under Fed. R. Evid. 403, and improper and unhelpful testimony from an attorney for the defendant and non-expert witness concerning the mental state of the defendants relating to an element of the offenses charged under Fed. R. Evid. 702 and 704;
>
> (B) exclude any evidence relating to the death of the Defendants' son, Paul, as irrelevant under Fed. R. Evid. 402 and

likely to cause unfair prejudice and confusion of the issues under Fed. R. Evid. 403;

(C) admit summary testimony concerning the Defendants' patient records under Fed. R. Evid. 1006 and Fed. R. Evid. 611, in lieu of admitting the actual patient records into evidence, to protect the confidentiality of medical and personal information of the Defendants' patients.

The Defendants have not responded to the Government's Motion in Limine.

The Indictment charges the Defendants with one count of engaging in a scheme to defraud the SSA, in violation of 18 U.S.C. § 1343, one count of concealment/failure to disclose information, in violation of 42 U.S.C. § 408(a)(4), and one count of making a false statement to the SSA, in violation 42 U.S.C. § 408(a)(2), all in connection with application for disability benefits filed in March 2004 with the SSA. The Government notes that each charge focuses on the Defendants' conduct and whether they made false statements and/or failed to disclose material information

concerning the application for disability benefits to SSA. Regarding each offense, the Government must prove either a knowingly false statement or a knowing failure to disclose material information. See <u>Pattern Criminal Jury Instructions of the Seventh Circuit</u>, 18 U.S.C. § 1343, 42 U.S.C. § 408(a)(4), 42 U.S.C. § 408(a)(2).

The Government states that Defendants have given notice they intend to call Springfield Attorney Don Hanrahan to provide "expert" opinions regarding the SSA claims evaluation process and determination. Mr. Hanrahan represented the Defendants since at least January 2008 in their dealings with the SSA concerning the denial of the disability claim that is the subject of the offenses charged. The Government states that this representation began after the Defendants learned that their conduct in pursuing disability benefits from the SSA was being investigated by the Office of Inspector General and the U.S. Attorney's Office. The Government further notes that, along with the Defendants' prior criminal defense attorneys, Mr. Hanrahan communicated with the Government concerning the criminal investigation and potential charges now alleged in

15

the Indictment, during which time Mr. Hanrahan advocated on behalf of the Defendants that criminal charges not be pursued. Attached to its motion is what the Government claims is Mr. Hanrahan's anticipated testimony.

The Government states that the potential testimony is the very communication that Mr. Hanrahan presented to the Government during the criminal investigation. As an attorney, Mr. Hanrahan was advocating on behalf of his clients and not presenting evidence or "expert" opinions. The admissibility of such evidence is governed by Rules 702 and 704 of the Federal Rules of Evidence.

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 704(b) of the Federal Rules of Evidence provides:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

As the Court earlier stated, the Defendants have not responded to the Government's Motion. Therefore, the Court presumes the Government has accurately summarized Mr. Hanrahan's proposed testimony. To the extent that Defendants intend to present opinion testimony regarding whether the Defendants actually made certain statements in applying for benefits or testimony attempting to persuade the jury how the words should be interpreted, the Court agrees such testimony must be excluded under the Federal Rules of Evidence. An expert witness is not permitted to opine on legal questions that stand to determine the outcome of the case. See Good Shepherd Manor Foundation, Inc. v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003). Additionally, Mr. Hanrahan may not testify regarding conversations between the Klinefelters and SSA employees unless he was present during the conversation and can testify based on his personal observations.

Based on the current record, the Court concludes that such testimony is not reliable and would not assist the trier of fact pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993), and its progeny. The proposed testimony, as described by the Government, appears intended to usurp the role of the jury.

Accordingly, the Government's Motion will be Allowed to the extent that Mr. Hanrahan's proposed testimony would be as it is described therein.

(B)

Next the Government seeks the exclusion of any testimony pertaining to the death of the Defendants' son. Their 18-year old son, Paul, died in November 2004 from a drug overdose, more than six months after the Defendants initially submitted the disability application. Rule 402 excludes evidence that is irrelevant and Rule 403 bars evidence when the probative value is outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. The Government notes that all criminal juries are also instructed that they should not be influenced by prejudice or

sympathy. See <u>Pattern Criminal Jury Instructions of the Seventh Circuit 1.01</u>.

Because the Defendants' son died over six months after their application for disability benefits, the Court is unable to determine how this tragic event could be relevant to the offenses charged. Although the Court expects that a jury would follow the instructions, there is a potential that a juror or jurors would feel sympathy for the Defendants and not decide the case based on the law. Accordingly, the Defendants shall be barred from intentionally eliciting testimony pertaining to the tragic death of their son.

The Government states that, pursuant to Rule 1006 of the Federal Rules of Evidence, it is anticipated that some witnesses will testify in summary fashion in presenting evidence of medical and billing records. Because of the voluminous nature of these records and in order to protect the confidentiality of patient, medical, personal and billing information, the Government asks that the Court allow it to present testimony, in part through leading questions, of witnesses summarizing voluminous records, all of which have been provided to the defense, without admitting such

records into evidence.

Based on Rule 1006 and Federal Rule of Evidence 611, the Court will allow the Government in appropriate circumstances to present evidence in this manner.

<u>Ergo</u>, the Joint Omnibus Motion in Limine filed by Defendants Vernon Klinefelter and Geraldine Klinefelter [d/e 47] is DENIED, as provided in this Order.

The Government's Motion First Motion in Limine [d/e 48] is ALLOWED, as provided in this Order.

Enter: March 19, 2014

    FOR THE COURT:

                                              s/Richard Mills
                                              Richard Mills
                                              United States District Judge